```
                                    )
ROBERT COHEN,                       )
                                    )
              Plaintiff,            )
       v.                           )
                                    )
BOARD OF TRUSTEES OF THE            )  Civil Action No. 14-754 (EGS)
UNIVERSITY OF THE DISTRICT          )
OF COLUMBIA, et al.,                )
                                    )
              Defendants.           )
                                    )
```

## MEMORANDUM OPINION

## I. Introduction

Plaintiff Robert Cohen ("Dr. Cohen") brings this action against the Board of Trustees of the University of the District of Columbia ("UDC") and certain UDC officials in their individual capacities—including Professor Vernise Steadman, Provost Graeme Baxter, and President Allen Sessoms—(collectively, "defendants") after he was terminated from his position as Professor. Dr. Cohen alleges six claims: (1) violation of his due process rights under 42 U.S.C. § 1983 ("Section 1983") and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ("Bivens"); (2) trespass to chattel; (3) conversion; (4) bailee indebtedness; (5) negligence; and (6) intentional infliction of emotional distress. Second Am. Compl., ECF No. 22 ¶¶ 37-70. He requests compensatory and punitive damages. *Id.* ¶ 71. Pending before the

1

Court is the defendants' motion to dismiss. Upon careful consideration of the defendants' motion, Dr. Cohen's response, the reply thereto, and the applicable law, the defendants' motion to dismiss is hereby **GRANTED IN PART** and **DENIED IN PART**. Dr. Cohen's due process claim pursuant to Section 1983 against the UDC Board of Trustees, President Sessoms, and Provost Baxter may proceed.

## II. Background

### A. Factual Background

As this matter is before the Court on defendants' motion to dismiss, the Court will assume that the following allegations in the complaint and attachments thereto are true. Dr. Cohen had been a tenured professor at UDC since 1976. Second Am. Compl., ECF No. 22 ¶ 3. In August 2010, he was terminated for failing to submit teaching evaluations for academic years 2006-2007, 2007-2008, and 2008-2009. *Id.* ¶¶ 14-17. For about a year prior to his termination, Dr. Cohen and defendants had been in a dispute over these evaluations, resulting in warnings, suspension without pay, a final opportunity to submit the evaluations, and ultimately, termination. Letter from Provost Graeme Baxter ("Baxter Letter"), ECF No. 22-2.

On June 18, 2010, then-Provost Graeme Baxter sent Dr. Cohen a final notice of the missing evaluations, requesting a completed evaluation portfolio within twenty-one days and

warning that failure to submit the portfolio would subject Dr. Cohen "to additional disciplinary action which could include termination." *Id.* However, Dr. Cohen was not aware of the letter and did not timely receive it. Second Am. Compl., ECF No. 22 ¶¶ 30-32; Letter Appealing Termination to President Sessoms ("Appeal Letter"), ECF No. 22-4. On August 5, 2010, having received no response, Provost Baxter sent Dr. Cohen a letter terminating him for cause pursuant to the collective bargaining agreement between UDC and its faculty, known as the "Sixth Master Agreement." Second Am. Compl., ECF No. 22 ¶ 17; Termination Statement of Cause Letter ("Termination Letter"), ECF No. 22-3. The letter provided Dr. Cohen with appeal instructions, also pursuant to the Sixth Master Agreement. *Id.* Dr. Cohen became aware of his termination about two weeks later. Second Am. Compl., ECF No. 22 ¶ 18. He discovered that his office "had been seized and all his possessions and university documents had been taken." *Id.* ¶ 20. Additionally, Dr. Cohen's UDC email address was closed and he "lost all his academic and administrative documents stored on UDC's system." *Id.* ¶ 21.

On September 1, 2010, Dr. Cohen appealed UDC's termination decision to then-UDC President Allen Sessoms, arguing in part that the Chairperson of his Department, Professor Vernise Steadman, did not submit one of his completed evaluations. *Id.* ¶ 23; Appeal Letter, ECF No. 22-4. UDC President Sessoms denied

Dr. Cohen's appeal on September 8, 2010, finding it "not credible" that Dr. Cohen did not receive UDC's multiple communications. Denial Letter from President Sessoms ("Denial Letter"), ECF No. 22-5.

Following the procedures set forth in the Sixth Master Agreement, Dr. Cohen then appealed President Sessoms' decision to his union—the UDC Faculty Association ("the Association")—for arbitration. Pl.'s Opp'n, ECF No. 25 at 8. However, the Association "refused to represent him." *Id.* Rather than appealing the Association's refusal to arbitrate as an unfair labor practice to the Public Employee Relations Board ("PERB") pursuant to the Comprehensive Merit Personnel Act ("CMPA"), D.C. Code § 1-605.02, Dr. Cohen filed this action.

**B. Procedural Background**

Dr. Cohen originally filed a breach of contract claim against the defendants in the Superior Court of the District of Columbia ("Superior Court") on September 9, 2013. Defs.' Mot., ECF No. 24 at 1. On March 14, 2014, his claim was dismissed with prejudice, although the Superior Court granted Dr. Cohen leave to file an amended complaint. *Id.* at 2. On April 2, 2014, Dr. Cohen filed an amended complaint, alleging the claims currently before the Court. *See* First Am. Compl., ECF No. 2-2 at 100–06. In light of the federal due process claim, the defendants

removed the case to this Court on April 30, 2014. *See* Notice of Removal, ECF No. 1.

This Court dismissed Dr. Cohen's first amended complaint with prejudice after Dr. Cohen failed to timely respond to the defendants' motion to dismiss and to the defendants' opposition to his already-late motion for an extension of time. *Cohen v. Bd. of Trs. of the Univ. of the District of Columbia*, 305 F.R.D. 10 (D.D.C. 2014). On appeal, the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") affirmed this Court's "denial of Cohen's motion to extend time and its dismissal of the complaint," but reversed the Court's dismissal "insofar as it dismissed the complaint with prejudice." *Cohen v. Bd. of Trs. for the Univ. of Univ. of the District of Columbia*, 819 F.3d 476, 485 (D.C. Cir. 2016).

Accordingly, Dr. Cohen filed a second amended complaint on August 1, 2016. *See* Second Am. Compl., ECF No. 22. Defendants filed a motion to dismiss on September 19, 2016. *See* Defs.' Mot., ECF. No 24. This motion is ripe and ready for review.

**III. Standard of Review**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotations omitted).

In considering a motion to dismiss, the Court should liberally view the complaint in the plaintiff's favor, accepting all factual allegations as true, and giving the plaintiff the benefit of all inferences that can be drawn therefrom. *Redding v. Edwards*, 569 F. Supp. 2d 129, 131 (D.D.C. 2008) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "While detailed factual allegations are not necessary, [the] plaintiff must plead enough facts to 'raise a right to relief above the speculative level.'" *Morello v. District of Columbia*, 73 F. Supp. 3d 1, 3 (D.D.C. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007)). The court "may consider attachments to the complaint as well as the allegations contained in the complaint itself." *English v. District of Columbia*, 717 F.3d 968, 971 (D.C. Cir. 2013). As discussed above, Dr. Cohen attaches several exhibits to his complaint, including the Sixth Master Agreement and his communications with the defendants.

## IV.  Analysis

### A. Dr. Cohen's Claims are Not Time-Barred

The defendants move to dismiss all of Dr. Cohen's claims on statutes of limitations grounds. *See* Defs.' Mot., ECF No. 24 at 10-15. Federal Rule of Civil Procedure 12(b)(6) "is the vehicle for asserting the affirmative defense of statutory time limitation." *Peart v. Latham & Watkins LLP*, 985 F. Supp. 2d 72, 80 (D.D.C. 2013). Because statutes of limitations issues often depend on contested questions of fact, "a defendant is entitled to succeed on a Rule 12(b)(6) motion to dismiss brought on statutes of limitations grounds only if the facts that give rise to this affirmative defense are clear on the face of the plaintiff's complaint." *Lattisaw v. District of Columbia*, 118 F. Supp. 3d 142, 153 (D.D.C. 2015).

The defendants argue that all of Dr. Cohen's asserted claims in the second amended complaint are conclusively time-barred. *See* Defs.' Mot., ECF No. 24 at 10-15. They reason that the statutes of limitations for his claims began to run when the claims accrued on September 10, 2010, the date that Dr. Cohen learned that President Sessoms had denied his termination appeal. *Id.* According to the defendants, the statutes of limitations ran through August 1, 2016, the date that Dr. Cohen filed his second amended complaint. *See id.* at 11-15. Because all of the claims are undisputedly subject to three-year

statutes of limitations, the defendants argue that all of Dr. Cohen's claims have been filed about three years too late. *Id.* at 12-14.

The defendants assert that the August 1, 2016 filing date is the date when the statutes of limitations were finally tolled because this Court dismissed Dr. Cohen's first amended complaint, which had been filed on April 2, 2014. *Id.* at 13. That July 7, 2014 dismissal, according to the defendants, "wiped out" the prior complaint filing's tolling effect. *Id.* (quoting *Ciralsky v. CIA*, 355 F.3d 661, 672 (D.C. Cir. 2004)). Thus, the defendants reason that the three-year statutes of limitations started running from the time Dr. Cohen's claims accrued in 2010 and did not stop for six years—until Dr. Cohen filed his second amended complaint on August 1, 2016. The Court disagrees.

The defendants' statutes of limitations argument fails in the face of the "mandate rule." Under that rule, "an inferior court has no power or authority to deviate from the mandate issued by an appellate court." *Indep. Petroleum Ass'n of Am. v. Babbitt*, 235 F.3d 588, 596-97 (D.C. Cir. 2001)(citing *Briggs v. Pa. R.R. Co.*, 334 U.S. 304, 306 (1948)). The mandate rule is "a 'more powerful version' of the law-of-the-case doctrine, which prevents courts from reconsidering issues that have already been decided in the same case." *Id.* at 597 (quoting *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 n.3 (D.C. Cir. 1996) (en banc)). The

rule's scope extends to issues that were decided by the D.C. Circuit "either explicitly or by necessary implication." *United States v. Ins. Co. of N. Am.*, 131 F.3d 1037, 1041 (D.C. Cir. 1997).

On appeal, the D.C. Circuit reversed this Court insofar as it had dismissed Dr. Cohen's complaint with prejudice, thus dismissing the case. *Cohen*, 819 F.3d at 485. Consequently, this Court's July 7, 2014 Order ultimately had the effect of dismissing Dr. Cohen's first amended complaint without prejudice, and did not dismiss his case. *See* Mandate of USCA, ECF No. 21. The D.C. Circuit explained that although dismissal of the complaint *and* the case would have wiped out a previously-filed complaint's tolling effect, dismissal of only the complaint, and not the case, would have no such result. *Cohen*, 819 F.3d at 478-79. Accordingly, the D.C. Circuit concluded that Dr. Cohen is "free to file an amended complaint" with the statute of limitations "tolled from the date of his *original* complaint." *Id.* at 478-79, 484 (emphasis added).[1] Thus, Dr. Cohen's second amended complaint, filed on August 1, 2016, is

---

[1] Although Dr. Cohen's original complaint was dismissed with prejudice, the Superior Court allowed Dr. Cohen to file an amended complaint in the same case, suggesting that the *case* was not dismissed. *See* Removed Materials, ECF No. 1-2, Exs. HH and II at 348-51. Regardless, the D.C. Circuit's mandate is clear: the statutes of limitations are tolled from the date of the original complaint.

not time-barred because the applicable statutes of limitations were tolled from the date that his original complaint was filed: September 9, 2013.

The D.C. Circuit's mandate disposes of this issue because the defendants argue that all of Dr. Cohen's claims are subject to three-year statutes of limitations. *See* Defs.' Mot., ECF No. 24 at 12-15. Further, defendants conceded that the original complaint filed on September 9, 2013 was timely. *See* Defs.' Reply, ECF No. 26 at 5 (explaining that the claim in Dr. Cohen's original complaint "was timely asserted"). Stated differently, because the statutes of limitations have been tolled from September 9, 2013, *Cohen*, 819 F.3d at 478-79, and because the defendants conceded that Dr. Cohen's claims with three-year limitations periods made as of that date were timely, *see* Defs.' Reply, ECF No. 26 at 5, all of Dr. Cohen's claims were timely. Accordingly, the applicable statutes of limitations pose no barrier for Dr. Cohen.

## B. Dr. Cohen's Common Law Claims (Counts 2-6) are Dismissed for Failure to Exhaust Administrative Remedies

The defendants also argue that Dr. Cohen's common law claims for trespass to chattel, conversion, bailee indebtedness, negligence, and intentional infliction of emotional distress are preempted because he failed to exhaust the administrative remedies available to him pursuant to the CMPA, D.C. Code § 1-

601.01 *et seq.*, and the Sixth Master Agreement. *See* Defs.' Mot.,
ECF No. 24 at 15-19. Dr. Cohen agrees that the Sixth Master
Agreement governed his employment relationship with UDC, but he
argues that he exhausted his administrative remedies. Pl.'s
Opp'n, ECF No. 25 at 8 (calling the Sixth Master Agreement a
"CMPA[-]sanctioned . . . collective bargaining agreement").
Alternatively, he argues that, for various reasons discussed
more fully below, he was not required to exhaust administrative
remedies. *Id.* at 8-13. The Court concludes that Dr. Cohen was
required to exhaust the administrative remedies put in place by
the Sixth Master Agreement and the CMPA. His common law claims
are dismissed because he failed to do so.

### 1. The CMPA and the Sixth Master Agreement

The "CMPA provides for a comprehensive system of
administrative review of employer actions——whether under CMPA
itself through [the Office of Employee Appeals ("OEA")] or under
a union contract subject to PERB [review]——and in each case
subject to judicial review in [the] Superior Court [of the
District of Columbia]." *District of Columbia v. Thompson*, 593
A.2d 621, 633 (D.C. 1991); *see* D.C. Code § 1-601.01, *et seq*. The
CMPA "create[s] a mechanism for addressing virtually every
conceivable personnel issue among the District, its employees,
and their unions——with a review role for the courts as a last

resort, not a supplementary role for the courts as an alternative forum." *Thompson*, 593 A.2d at 634.

Normally, a terminated employee can choose between: (1) appealing his termination to the OEA, D.C. Code § 1-616.52(b); or (2) using any grievance procedure set out in an applicable collective bargaining agreement. *Id.* § 1-616.52(e). However, appeal to the OEA is foreclosed when the applicable collective bargaining agreement "includes exclusive grievance procedures." *See Pitt v. District of Columbia Dep't of Corrs.*, 819 A.2d 955, 958 (D.C. 2003) (citation omitted); D.C. Code § 1-606.02(b) (stating that "[a]ny performance rating, grievance, adverse action or reduction-in-force review, which has been included within a collective bargaining agreement . . . shall not be subject to the provisions" of the CMPA's subchapter governing appellate proceedings before the OEA). The Sixth Master Agreement included such exclusive grievance procedures. *See* Sixth Master Agreement, ECF No. 22-1 at art. IX, §§ B(2-3); art. XI, § A(1). Therefore, the process set forth in the Sixth Master Agreement was Dr. Cohen's only available recourse.[2]

_____

[2] Even if Dr. Cohen had been permitted to appeal his removal to the OEA as an alternative to following the Sixth Master Agreement's grievance procedure, the Court's ultimate conclusion that Dr. Cohen failed to exhaust his administrative remedies would not change. Dr. Cohen has not alleged that he appealed his termination to OEA nor, as will be discussed, has he exhausted the grievance procedure put in place by the Sixth Master

With appeal to the OEA foreclosed, Dr. Cohen's only recourse was to make use of the grievance procedure put in place by the Sixth Master Agreement. The Sixth Master Agreement is an agreement "made between the [UDC] Faculty Association . . . and the [UDC] Board of Trustees." Sixth Master Agreement, ECF No. 22-1 at art. I. It "set[s] forth terms and conditions of employment for faculty," including the disciplinary procedures that UDC and its employees must follow. *Id.* at arts. II, XI. As articulated above, the disciplinary procedures set forth in the Sixth Master Agreement are the "sole and exclusive means by which a disciplinary or adverse action may be brought against a faculty member . . . ." *Id.* at art. XI, § A(1).

According to the Sixth Master Agreement, a faculty member may only be subject to a "disciplinary action"—defined as a "written reprimand, suspension, or dismissal"—for cause. *Id.* at §§ A(2),(3). First, disciplinary action shall be preceded by a discussion between the faculty member and a University Administrator. *Id.* at § B(1). At that point, the Administrator must recommend a course of action. When suspension or termination is recommended, as it was for Dr. Cohen, the Provost shall conduct an informal inquiry. If she determines that the

---

Agreement. Thus, assuming both options were open to him, he has exhausted neither one.

recommended action is warranted, the Provost shall provide the faculty member with a written statement of cause describing the adverse action and the facts warranting it. *Id.* at §§ B(3-5). The aggrieved faculty member has ten days to appeal the decision. *Id.* at § B(6). At that point, the President may conduct an inquiry and shall either sustain, modify, or dismiss the decision. *Id.* at § C(1)(a). If the President upholds a termination decision, the decision may be appealed "by the Association to arbitration" in accordance with Article IX. *Id.* at § C(1)(b). Article IX clarifies that "the Association, and only the Association, may . . . commence an arbitration proceeding." *Id.* at art. IX, § D(7). The Sixth Master Agreement does not address a next step if the Association declines to arbitrate. At this point, then, the "exclusive" Sixth Master Agreement procedure is completed and an affected employee must turn to the CMPA for recourse. The CMPA allows an employee to appeal the Association's refusal to arbitrate to the PERB as an "unfair labor practice." D.C. Code § 1-605.02(3). The PERB's evaluation of the Association's declination is reviewable in Superior Court. D.C. Code § 1-617.13.

### 2. Exhaustion Requirement

Because, in Dr. Cohen's words, all of his claims "relate[] to his removal . . . from employment," his removal was a "disciplinary or adverse action" covered by the exclusive

14

provisions of the Sixth Master Agreement. Pl.'s Opp'n, ECF No.
25 at 12; *see* Sixth Master Agreement, ECF No. 22-1 at art. XI, §
A(2). Assuming his claims are true, Dr. Cohen complied with the
Sixth Master Agreement's mandated grievance procedure because he
appealed his termination to President Sessoms. *See* Appeal
Letter, ECF No. 22-4; Sixth Master Agreement, ECF No. 22-1 at
art. XI, §§ B(1-6). When President Sessoms upheld Dr. Cohen's
removal, Dr. Cohen then properly "requested that the Association
commence arbitration proceedings" to appeal the decision, but
the Association "refused to represent him."[3] Pl.'s Opp'n, ECF No.
25 at 8; Sixth Master Agreement, ECF No. 22-1 at art. XI, §
C(1)(b). Accordingly, he contends that that he "exhausted all
administrative remedies." *Id.* The Court disagrees.

Once the Association refused his request to appeal his
termination, Dr. Cohen's "only remedy at that point [was] a
complaint against the union filed with the Public Employee
Relations Board, requesting an order compelling the union to
arbitrate." *See Bd. of Trs. of the Univ. of the District of
Columbia v. Myers*, 652 A.2d 642, 646 (D.C. 1995). An appeal to

---

[3] Defendants argue that Dr. Cohen did not raise this fact in his
complaint and thus, cannot "amend his complaint through
opposition." Defs.' Reply, ECF No. 26 at 11 n. 7. However, the
Court finds that this fact was sufficiently pled. *See* Second Am.
Compl., ECF No. 22 ¶ 41 (arguing that the Sixth Master Agreement
violates due process when the Association elects not to proceed
to arbitration).

the PERB is mandated because there is "no doubt that [the] PERB has the power, under D.C. Code § 1-605.[0]2(3), to order the union to pursue arbitration of an employee's claim against the employer if [the] PERB concludes that the union's refusal to arbitrate amounted to an unfair labor practice." *Id.* It is undisputed that Dr. Cohen never filed a complaint against the Association with the PERB. This means that he "failed to take advantage of the final procedural remedy" available to him. *Id.* at 647. When the Association failed to pursue arbitration, Dr. Cohen "could not circumvent the procedure prescribed in the [collective bargaining agreement and the CMPA]——namely, arbitration and review by the PERB——by filing a lawsuit." *See Johnson v. District of Columbia*, 552 F.3d 806, 811 (D.C. Cir. 2008). Because Dr. Cohen attempted just that prohibited circumvention——declining to file a complaint against his Association with the PERB and, instead, filing a lawsuit——he failed to exhaust the administrative remedies available to him.

### 3. Dr. Cohen's Arguments Against Exhaustion are Unavailing

Dr. Cohen's fallback position——that he had no need to exhaust administrative remedies——is unpersuasive. His primary argument is that he did not need to exhaust the available grievance procedure because the Sixth Master Agreement eliminated the safeguard of "impartial judicial review of an

employee's dispute." Pl.'s Opp'n, ECF No. 25 at 8–11. This argument fails because the CMPA provides for review of the PERB's decisions in the Superior Court.[4] D.C. Code §§ 1-605.02(12), 1-617.13(c) ("Any person aggrieved by a final order of the [PERB] granting or denying in whole or in part the relief sought may obtain review in the Superior Court by filing a request within 30 days after the final order has been issued.").

To the extent that Dr. Cohen is attempting to make a futility argument, that argument also fails. *See Myers*, 652 A.2d at 645 ("[An] employee may be able to bypass administrative remedies under a collective bargaining agreement by showing that the pursuit of these remedies would be futile."). First, the fact that the Association denied his alleged request to arbitrate does not demonstrate futility. *See id.* at 648 ("The fact that a union may decline to pursue an employee's grievance does not in itself reflect futility in exhausting administrative

---

[4] This conclusion is distinct from the due process analysis, *see infra* Section C. The fact that Dr. Cohen did not exhaust his administrative remedies does not automatically warrant dismissing his due process claim because the defendants did not argue that Dr. Cohen was required to exhaust his constitutional claim. Indeed, the defendants expressly disavowed opposing Dr. Cohen's due process claim on CMPA preemption grounds. *See* Defs.' Reply, ECF No. 26 at 16 n.8. Because the D.C. Circuit has expressly declined to decide whether the CMPA's exhaustion requirement is jurisdictional or nonjurisdictional, the Court need not raise the issue sua sponte. *See Johnson v. District of Columbia*, 552 F. 3d. 806, 811 n.2 (D.C. Cir. 2008).

remedies . . . ."). Second, because "the PERB has authority to determine that the failure to arbitrate under a [collective bargaining agreement] is an unfair labor practice and to fashion a remedy," "it would not have been futile for [Dr. Cohen] to seek a remedy from the PERB" when the Association declined to arbitrate. *See Johnson*, 552 F.3d at 814.

Dr. Cohen also argues that he did not need to exhaust his administrative remedies because OEA appeal was not an option, thanks to the Sixth Master Agreement's exclusive grievance procedure. *See* Pl.'s Opp'n, ECF No. 25 at 9. As explained above, the Court agrees that Dr. Cohen was foreclosed from appealing to the OEA. However, the Sixth Master Agreement's exclusive grievance procedure does not negate his duty to exhaust that procedure before proceeding to court. In *Myers*, a UDC professor bound by an exclusive grievance procedure was obligated to exhaust that procedure before proceeding to court on his claim against the school. 652 A.2d at 646-48. This was true even though the exclusive procedure did not "provide for appeal to OEA." *Id.* at 645 n.6. So too here.

Dr. Cohen also argues that he did not need to exhaust his administrative remedies because his common law tort claims did "not arise out of employer conduct in handling personnel ratings, employee grievances, and adverse actions." Pl.'s Opp'n, ECF No. 25 at 11-12. In other words, Dr. Cohen argues that his

tort claims are not sufficiently related to his employment to be cognizable as claims governed by the CMPA or the CMPA-sanctioned Sixth Master Agreement. With his tort claims purportedly outside of the reach of the CMPA and the Sixth Master Agreement, Dr. Cohen argues that he had no need to exhaust the administrative remedies under the CMPA and the Sixth Master Agreement.

The Court disagrees. While it is true that the CMPA and a CMPA-sanctioned collective bargaining agreement do not preempt all tort claims generally, they do preempt any claims of wrongful treatment and injury that are cognizable as personnel issues. *King v. Kidd*, 640 A.2d 656, 663 (D.C. 1993); *see also Thompson*, 593 A.2d at 634 (describing the CMPA as "a mechanism for addressing virtually every conceivable personnel issue among the District, its employees, and their unions" and finding that claims within its reach are only reviewed by courts "as a last resort"). Dr. Cohen's tort claims all arise from a quintessential personnel issue: his termination. Dr. Cohen himself contradicts his argument when he admits that his claims "relate[] to his removal . . . from employment." *See* Pl.'s Opp'n, ECF No 25 at 12. His trespass to chattel, conversion, bailee indebtedness, and negligence claims are all based on UDC's alleged seizure of his office and the items found therein following its decision to fire him. *See* Second Am. Compl., ECF No. 22 ¶¶ 18, 20, 21, 43, 46, 49, 52. Similarly, his intentional

infliction of emotional distress claim is connected to his dismissal, because it is premised on defendants "targeting" him for termination. *Id.* ¶¶ 54-70. In short, because Dr. Cohen's tort claims all clearly connect back to the core dispute regarding his termination, they do not escape the reach of the CMPA and the CMPA-sanctioned Sixth Master Agreement. Accordingly, Dr. Cohen was obligated to exhaust the administrative remedies available to him.

Alternatively, Dr. Cohen argues that he need not exhaust his claims because the CMPA and the Sixth Master Agreement, which both only cover CMPA-defined "grievances," do not apply because his tort claims cannot be understood as CMPA "grievances." Pl.'s Opp'n, ECF No. 25 at 12-13. Dr. Cohen's contention that his claims are not "grievances" has some merit. The CMPA defines a "grievance" as "any matter under the control of the District government which impairs or adversely affects the interest, concern, or welfare of employees, but does not include adverse actions resulting in removals." D.C. Code § 1-603.01(10). Because all of Dr. Cohen's claims are ultimately connected to his removal, the claims do not fit within the CMPA definition of a "grievance." *See* Pl.'s Opp'n, ECF No. 25 at 12.

But it does not follow that Dr. Cohen need not exhaust his administrative remedies. First, the CMPA "grievance" definition goes on to specify that "[t]his definition . . . is not intended

to restrict matters that may be subject to a negotiated grievance and arbitration procedure in a collective bargaining agreement between the District and a labor organization representing employees." D.C. Code § 1-603.01(10). Thus the CMPA "grievance" definition does not restrict the scope of the Sixth Master Agreement, which clearly subjects removal-related matters to its exclusive grievance procedure. *See* Sixth Master Agreement, ECF No. 22-1 at art. XI, §§ A(2), B(6), C(1). Bound by that exclusive grievance procedure, Dr. Cohen was required to exhaust it before filing suit.

Regardless, Dr. Cohen errs in arguing that the CMPA and the CMPA-sanctioned Sixth Master Agreement only apply to "grievances" as defined in the CMPA. A "grievance" is just one *type* of personnel issue that the CMPA addresses. "Adverse actions," like removals, are another. *See* D.C. Code § 1-616.52(d) (differentiating between a "grievance" and "adverse actions.") Although the CMPA provides procedures for both types of matters, a collective bargaining agreement's procedures for dealing with such matters take precedence. *Id.* Thus, Dr. Cohen is misguided in thinking his claim escapes the exclusive grievance procedure put in place by the Sixth Master Agreement and the CMPA.

Finally, Dr. Cohen contends that he did not need to exhaust the available administrative remedies because "the CMPA treats

educational employees of UDC differently from other District employees under D.C. Code § 1-602.03(b)." Pl.'s Opp'n, ECF No. 25 at 13. This argument is also unavailing because it does not appear to the Court that the inapplicability of the exempted subchapters have any bearing on Dr. Cohen's obligation to exhaust his removal-related claims. For example, Section 1-602.01 states that the CMPA "shall apply to all employees of the District of Columbia" unless "specifically exempted." Section 1-602.03 subjects UDC educational employees to all of the CMPA except the subchapters concerning: (1) career service, subchapter VIII; (2) executive service, subchapter X; (3) incentive awards, subchapter XI; (4) employee development, subchapter XIII; (5) the voluntary leave transfer program, subchapter XIII-A; (6) incentive awards, subchapter XIX; and (7) reductions-in-force, subchapter XXIV. It also excludes UDC employees from the provisions of §1-609.01, which "relat[es] to the development of job descriptions." None of these exempted subchapters are relevant to Dr. Cohen's claims and none concern adverse action or grievance procedures. Thus, Dr. Cohen, as a UDC employee, was obligated to exhaust his administrative remedies under the CMPA.

In sum, all of Dr. Cohen's tort claims were connected to his removal from employment such that they did not escape the grasp of the CMPA and the CMPA-sanctioned Sixth Master

Agreement, to which Dr. Cohen was bound. His failure to exhaust the administrative remedies available to him, namely appealing the Association's refusal to arbitrate to the PERB before filing a lawsuit, warrants dismissal of those tort claims.

### C. Dr. Cohen States a Due Process Claim Against UDC Board of Trustees, Provost Baxter, and President Sessoms, but Fails to State a Claim Against Professor Steadman

Defendants move to dismiss Dr. Cohen's due process claim pursuant to Section 1983 and *Bivens* for failure to state a claim. They argue that Dr. Cohen received due process because he had notice of his termination and an opportunity to respond, "the essential elements of a due process claim." Defs.' Mot., ECF No. 24 at 21. In turn, Dr. Cohen asserts that his due process rights were violated because he was terminated without notice, without an opportunity to be heard, and for "wholly arbitrary and invidious reasons." Second Am. Compl., ECF No. 22 ¶¶ 38-41. The Court understands Dr. Cohen's argument to be that his due process rights were violated in different ways by UDC and the individual defendants, respectively. First, he alleges that the Sixth Master Agreement, "provided by" the UDC Board of Trustees, is unconstitutional because no "impartial judicial review is conducted at all when the third-party union elects not to represent the employee." *Id.* ¶ 41. As the Court understands it, Dr. Cohen argues that the Sixth Master Agreement violates procedural due process because there is no substantive,

independent review of UDC's termination decision if the PERB finds that the Association's refusal to arbitrate was not an unfair labor practice. Dr. Cohen's allegations against the individual defendants are less clear. He seems to argue that President Sessoms, Provost Baxter, and Professor Steadman violated his due process rights in three ways: (1) by implementing the unconstitutional Sixth Master Agreement; (2) by flouting the procedural requirements of the same policy; and (3) by "target[ing]" him for termination for "invidious reasons." *See generally* Second Am. Compl., ECF No. 22. Because the defendants' motion to dismiss fails to address several of these plausible arguments, the motion as to the UDC Board of Trustees, President Sessoms, and Provost Baxter is **DENIED**. The motion to dismiss as to Professor Steadman is **GRANTED**.

### 1. Dr. Cohen States a Due Process Claim Pursuant to Section 1983 Against the UDC Board of Trustees

Section 1983 provides a private cause of action against any person who, under the color of state law, deprives another of a constitutional or statutory right. A municipality, like UDC, "can be found liable under [Section] 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't. of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694–95 (1978))(emphasis in original). Thus, to state a claim

24

against UDC, Dr. Cohen's complaint must allege that: (1) he suffered a constitutional harm; and (2) the constitutional harm was caused by UDC's policy or custom. *Morello v. District of Columbia*, 73 F. Supp. 3d 1, 3-4 (D.D.C. 2014)(citing *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003)). With regard to the second prong, Dr. Cohen must establish an "affirmative link," such that UDC's municipal policy was the "moving force" behind the constitutional violation. *Id.* at 4 (quoting *Baker*, 326 F.3d at 1306).

It is uncontested that UDC and its Board of Trustees is an independent agency subject to Section 1983 municipal liability. § 38-1202.01 (UDC is an "independent agency of the government of the District of Columbia . . . which [is] governed by the Board of Trustees" with the power to sue or be sued); *see also Hill v. Bd. of Trs. of the Univ. of the District of Columbia*, 146 F. Supp. 3d 178 (D.D.C. 2015) (finding that the plaintiff, a UDC employee, stated a Section 1983 claim against the UDC Board of Trustees); *Green v. Washington, D.C.*, Civ. No. 05-1097, 2006 WL 1712399 at *2 n.3 (D.D.C. June 16, 2006) (finding that the UDC Board of Trustees is an independent agency subject to Section 1983 liability, notwithstanding the plaintiff's failure to state a claim).

Having determined that the UDC Board of Trustees is subject to Section 1983 municipal liability, the Court now analyzes

whether Dr. Cohen has plausibly alleged: (1) an underlying due process constitutional violation; and (2) that a municipal policy caused the underlying violation.

**a. Predicate Due Process Constitutional Violation**

The Due Process Clause guarantees that no person "shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Procedural due process "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests  . . . ." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). To that end, the government must provide "sufficient notice and a meaningful opportunity to be heard on the deprivation of a protected liberty or property interest." *Rason v. Nicholson*, 562 F. Supp. 2d 153, 155 (D.D.C. 2008)(citing *United States v. E–Gold, Ltd.*, 521 F.3d 411, 415 (D.C. Cir. 2008)). Dr. Cohen pleads a plausible predicate due process violation because he alleges that: (1) he was deprived of a protected liberty or property interest; (2) he lacked sufficient notice of his impending deprivation; and/or (3) he lacked a meaningful opportunity to be heard on that deprivation.

"The first inquiry in every [procedural] due process challenge is whether the plaintiff has been deprived of a protected interest in liberty or property. Only after finding the deprivation of a protected interest do we look to see if the [government's] procedures comport with due process." *Gen. Elect.*

*Co. v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999)). Dr. Cohen's interest in his continued employment is protected because, as a tenured professor at UDC, he could only be fired "for cause." Sixth Master Agreement, ECF No. 22-1 at art. XI, § A(3); Second Am. Compl., ECF No. 22 ¶ 3. More generally, "[i]t is undisputed that the [CMPA] creates a property interest for employees governed by it." *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 72 (D.D.C. 2007) (quotes and citations omitted). Plaintiff, a UDC employee, was governed by the CMPA-sanctioned Sixth Master Agreement and the CMPA. Thus, accepting the allegations in the complaint as true and drawing all reasonable inferences in his favor, *Iqbal*, 556 U.S. at 678, Dr. Cohen has alleged a cognizable property interest triggering "sufficient notice and a meaningful opportunity to be heard." *Budik v. United States,* 949 F. Supp. 2d 14, 25 (D.D.C. 2013).

Next, the Court must "ask what process [UDC] provided, and whether it was constitutionally adequate." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). Generally, whether a procedure is adequate is a "flexible" assessment that "varies with the particular situation." *Id.* at 127 (citing *Mathews*, 424 U.S. at 335). In applying the *Mathews* test—which involves weighing the private interest, the government interest, and the risk of an erroneous deprivation—the court "usually has held that the

Constitution requires some kind of hearing *before* the State deprives a person of liberty or property." *Id.* However, in some circumstances, a post-deprivation hearing satisfies due process. *Id.* at 128; *see also Black v. District of Columbia*, 134 F. Supp. 3d 255, 261 (D.D.C. 2015)("Due process may be satisfied by either pre-deprivation procedures or adequate post-deprivation remedies.")(internal quotations and citations omitted). While Dr. Cohen alleges that he lacked prior notice because he did not receive UDC's letters warning him of his impending termination, Second Am. Compl., ECF No. 22 ¶¶ 15, 16, his complaint focuses on what he alleges is the Sixth Master Agreement's inadequate post-deprivation process. Dr. Cohen does not allege that the Sixth Master Agreement fails to provide sufficient pre-termination notice. *See generally* Second Am. Compl., ECF No. 22. Therefore, Dr. Cohen's claim that he did not *actually* receive notice is irrelevant to his argument that the Sixth Master Agreement is facially unconstitutional.

The relevant allegation, then, is that Dr. Cohen was not provided with a meaningful opportunity to be heard once he was terminated. Dr. Cohen argues that the Sixth Master Agreement does not provide for independent review of UDC's adverse employment actions when the Association elects not to appeal that action to arbitration. Second Am. Compl., ECF No 22 ¶ 41. Indeed, the Association's refusal to arbitrate is appealable

under the CMPA to the PERB and later to the Superior Court, but this review is limited to whether the Association's decision was "an unfair trade practice," and does not assess the merits of the underlying employment action. *See* D.C. Code §§ 1-605.02(3), 1-617.13(c). To that end, Dr. Cohen argues that the fairness of the Association's refusal to arbitrate is "unrelated" to his termination. Pl.'s Opp'n, ECF No. 25 at 16.

The defendants contend that Dr. Cohen fails to state a claim because he had an opportunity to "challenge his termination" by appealing to UDC's President Sessoms. Defs.' Mot., ECF No. 24 at 20-22 (citing Termination Letter, ECF No. 22-3, allowing Dr. Cohen to "appeal directly to the President"). Relying on *Guerrero v. University of the District of Columbia*, they contend that Dr. Cohen's due process claim "must be dismissed" because he was "afforded an administrative process through which [he] could raise any challenges to the decision to terminate." Defs.' Mot., ECF No. 24 at 21 (citing 251 F. Supp. 2d 13, 22-23 (D.D.C. 2003) (dismissing Plaintiff's due process claim because she was able to appeal her termination to the Superior Court)). However, defendants do not acknowledge Dr. Cohen's essential claim: that the Sixth Master Agreement is constitutionally inadequate. *See generally id.*

The Court finds that Dr. Cohen has stated a due process claim because the Sixth Master Agreement does not provide for

29

independent review of the merits of a termination decision when the Association refuses to bring the employee's appeal to arbitration. As previously discussed, under the Sixth Master Agreement, a faculty member is entirely at the mercy of the Association if the President upholds his termination: "[t]he Association, and *only* the Association" "may" commence an arbitration proceeding. *Id.* at art. XI, § (C)(1)(b), art. IX, § D(7)(emphasis added).[5] If the Association declines to arbitrate, there is no further process available under the Sixth Master Agreement. At that point, an employee's only option is to appeal the Association's decision to the PERB as an unfair labor practice pursuant to the CMPA. D.C. Code §§ 1-605.02(3),(12). The PERB's decision is appealable to the Superior Court. 1-617.13(c). If the PERB and/or the Superior Court finds that the Association's decision was not unfair, UDC's termination decision will never be reviewed.

Contrary to the defendants' assertions, Dr. Cohen's predicament is distinct from the facts in *Guerrero*. In that case, the plaintiff was subject to an earlier version of UDC's Master Agreement and was "afforded an administrative process through which she could raise any challenges to the decision

---

[5] Article XI – "Disciplinary/Adverse Action" refers to Article IX "Grievance Procedures" for arbitration procedures.

before the termination became effective, *coupled with* a judicial appeal [to the Superior Court.]" 251 F. Supp. 2d at 22-23 (emphasis added). This differs from the Master Agreement that governed Dr. Cohen's employment with UDC. Pursuant to the Sixth Master Agreement, independent review is limited to whether the Association's refusal to arbitrate was unfair. *See* §§ 1-605.02(3), 1-617.13(c). This independent review does not, therefore, reach the merits of the termination decision. The Court recognizes that courts have "repeatedly found that '[g]iven the layers of administrative and judicial review it provides, the CMPA satisfies constitutional due process requirements' under the *Mathews* test." *Black v. District of Columbia*, 134 F. Supp. 3d 255, 261 (D.D.C. 2015)(quoting *Owens v. District of Columbia*, 923 F. Supp. 2d 241, 250 (D.D.C. 2013) and citing *Mathews*, 424 U.S. at 321). However, Dr. Cohen does not plead that the CMPA is unconstitutional. Indeed, because the Sixth Master Agreement was exclusive, the CMPA's layers of judicial review were unavailable to Dr. Cohen.

It well may be, after the benefit of discovery, that the Sixth Master Agreement in fact satisfies due process. *See, e.g.*, *Hudson v. City of Chicago*, 374 F.3d 554, 554 (7th Cir. 2004)(concluding that a collective bargaining agreement satisfied due process, even when union refused to initiate appellate procedures on plaintiffs' behalf, because the

plaintiffs "could have sued the union"). However, the
defendants' motion to dismiss does not confront Dr. Cohen's
facial challenge to the Sixth Master Agreement and cites no
precedent upon which this Court could find in its favor.
Instead, the defendants merely conclude that Dr. Cohen received
the process he was due when he appealed to President Sessoms,
without considering whether due process requires an independent
review of UDC's decision.

### b. Municipal Liability

Assuming Dr. Cohen stated a due process violation, the
defendants argue that his claim must be dismissed because he has
not pled that any insufficient process was the result of a UDC
policy or custom. *See* Defs.' Mot., ECF No. 24 at 21-22. The
Court disagrees. As stated above, a municipality can be found
liable under Section 1983 only if it *itself* caused the
constitutional violation. *City of Canton,* 489 U.S. at 385. Dr.
Cohen must therefore allege that UDC "deliberately" pursued the
problematic policy, establishing an "affirmative link" between
the Sixth Master Agreement and the due process violation.
*Oklahoma City v. Tuttle,* 471 U.S. 808, 823 (1985). There is no
"heightened pleading standard" in alleging municipal liability.
*Faison v. District of Columbia*, 907 F. Supp. 2d 82, 85 (D.D.C.
2012). "At the pleading stage, only an allegation of the
existence of a policy, practice, or custom and its causal link

to the constitutional deprivation suffered is required." *Maniaci v. Georgetown Univ.,* 510 F. Supp. 2d 50, 64 (D.D.C. 2007). Moreover, when "a plaintiff claims that a particular municipal action *itself* violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straight forward." *Bd. Of Cty. Cmm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404-05 (1997). Once a Court concludes that the municipal action *itself* is unconstitutional, it can easily find "that the municipal action was the moving force behind the injury . . . ." *Id.* Such is the case here.

Dr. Cohen established that UDC caused the underlying violation because it undeniably negotiated and ratified the Sixth Master Agreement, an official "agreement made between the [UDC] Faculty Association . . . and the [UDC] Board of Trustees." Sixth Master Agreement, ECF No. 22-1, art. I. This Agreement, as discussed, is the exclusive policy by which UDC employees may resolve grievances. S*ee id*. at art. IX, §§ B(2-3), art. XI, § A(1). Its very purpose is to create municipal policy: it "set[s] forth terms and conditions of employment" for public employees. *Id.*, art. II; *see Monell*, 436 U.S. at 694 (finding that the New York Board of Education's unconstitutional maternity leave policy "unquestionably involves official policy as the moving force of the constitutional violation"). When, as here, a challenged policy is "properly made by that government's

33

authorized decision makers, it surely represents an act of official government 'policy' . . . . " *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).

Because Dr. Cohen pled that the Sixth Master Agreement deprived him of a protected property interest without due process and because the Sixth Master Agreement is a municipal policy, the defendants' motion to dismiss Dr. Cohen's municipal Section 1983 claim is **DENIED**.

## 2. Dr. Cohen States a Due Process Claim Against Individual Defendants President Sessoms and Provost Baxter, but Fails to State a Claim Against Professor Steadman

While Dr. Cohen's complaint could certainly be more clearly pled, the Court understands him to allege that the three individual defendants, acting in their individual capacities, deprived him of due process in three ways: (1) by implementing and enforcing the Sixth Master Agreement; (2) by failing to adhere to the Sixth Master Agreement's procedural requirements; and (3) by targeting him for termination for "wholly arbitrary and invidious reasons." Second Am. Compl., ECF No. 22 ¶¶ 37 (incorporating ¶¶ 10, 11, 13-17, 24-30, 34-36), 38-40. The defendants respond that there has been no due process violation because Dr. Cohen received notice and an opportunity to respond before he was terminated. Defs.' Mot., ECF No. 24 at 20-22.

To withstand the motion to dismiss, Dr. Cohen must allege that each defendant through his or her "own individual actions, has violated the Constitution." *Elkins v. District of Columbia*, 690 F.3d 554, 564 (D.C. Cir. 2012)(quoting *Iqbal,* 556 U.S. at 676). Therefore, Dr. Cohen must plead that Professor Steadman, Provost Baxter, and President Sessoms *each* deprived him of due process. With this pleading requirement in mind, the Court examines the allegations against each individual defendant.

### a. Professor Vernise Steadman

Dr. Cohen's Section 1983 claim against Professor Steadman must be dismissed because he has not pled any facts connecting her to the alleged constitutional violation. *See Iqbal*, 556 U.S. at 676 ("[In Section 1983 suits] a plaintiff must plead that *each* . . . defendant, through the official's *own individual actions*, has violated the Constitution."). Dr. Cohen only alleges that Professor Steadman "took no action" when she received his 2008-2009 school year evaluation and did not submit it to school administrators "deliberately in order to terminate [him]." Second Am. Compl., ECF No. 22 ¶¶ 10, 11.

Taking these allegations as true, Dr. Cohen does not argue that Professor Steadman violated his due process rights. Her inaction is completely unrelated to his alleged injury that he was denied notice and an opportunity to respond under the Sixth Master Agreement. While her alleged inaction may have

contributed to the causes underlying the termination, Dr. Cohen does not claim that Professor Steadman took any action to terminate him without due process and the complaint does not allege that she implemented the Sixth Master Agreement. *See generally id.* Dr. Cohen's claim against Professor Steadman must therefore be dismissed because he establishes no "affirmative link" between her actions (or lack thereof) and his constitutional injury. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976).

**b. Provost Graeme Baxter and President Allen Sessoms**

Dr. Cohen's allegations against Provost Baxter and President Sessoms are similar. While Dr. Cohen's argument is far from clear, the Court understands him to allege that they both denied him due process when they terminated him pursuant to the Sixth Master Agreement. First, he pleads that Provost Baxter enforced the school's unconstitutional policy when she sent a termination statement of cause invoking the Sixth Master Agreement's disciplinary process. Second Am. Compl, ECF No. 22 ¶ 17 (citing and attaching Termination Letter, ECF No. 22-3); *see also English*, 717 F.3d at 971 ("[The Court] may consider attachments to the complaint as well as the allegations contained in the complaint itself."). Next, he pleads that President Sessoms upheld his termination when he denied the appeal pursuant to the Sixth Master Agreement. Second Am.

Compl., ECF No. 22 ¶ 26 (citing and attaching Denial Letter, ECF No. 22-5).

Unlike the claim against Professor Steadman, the alleged actions that Provost Baxter and President Sessoms took to terminate Dr. Cohen pursuant to the plausibly unconstitutional Sixth Master Agreement are "connected to [Dr. Cohen's] constitutional harm." *McGinnis v. District of Columbia*, 65 F. Supp. 3d 203, 217 (D.D.C. 2014); *see also Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010)("Section 1983 allows a plaintiff to impose liability upon a defendant-supervisor who . . . implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement . . . of which [subjects the plaintiff] . . . to the deprivation of any rights secured by the Constitution.")(internal citations omitted); *OSU Student Alliance v. Ray*, 669 F.3d 1053, 1076 (9th Cir. 2012) ("Advancing a policy that requires subordinates to commit constitutional violations is always enough for Section 1983 liability . . . so long as the plaintiff's constitutional injury in fact occurs pursuant to the policy.").

Not only do the defendants not address this argument in their motion to dismiss, but they do not address *any* argument against the individual defendants. Instead they rely on the same conclusory and sparsely-supported argument that Dr. Cohen received the process he was due. *See generally* Defs.' Mot., ECF

No. 24. For the reasons discussed above, the Court disagrees.
Without supporting precedent or persuasive argument to the
contrary, Dr. Cohen's claim against Provost Baxter and President
Sessoms survives, crossing "the line from conceivable to
plausible." *Iqbal*, 556 U.S. at 680.

Second, Dr. Cohen alleges that Provost Baxter and President
Sessoms denied him due process when they failed to adhere to the
Sixth Master Agreement's procedures. *See* Second Am. Compl., ECF
No. 22 ¶ 27. Notably, with the exception of one allegation, this
argument is only raised in Dr. Cohen's opposition. *See* Pl.'s
Opp'n, ECF No. 25 at 13-15.[6] The Court "need not consider any
claims presented for the first time in [Dr. Cohen's] opposition"
because a "plaintiff may not amend his complaint through his
opposition . . . ." *Jones v. Castro*, 168 F. Supp. 3d 169, 181
(D.D.C. 2016).

Accordingly, the Court will consider only the procedural
defect articulated in Dr. Cohen's complaint: that defendants
violated his due process rights when he was not given the ninety
days' "notice" that he was supposedly entitled to under the

_____

[6] The procedural violations alleged against the defendants
include: not initiating the disciplinary process within 90 days
as required, invoking an improper ground for removal, requiring
an evaluation when one was not necessary, and failing to
adequately address all of Dr. Cohen's arguments in denying his
appeal. *Id.*

Sixth Master Agreement. Second Am. Compl., ECF No. 22 ¶ 27

(citing Sixth Master Agreement, ECF No. 22-1 art. XI § A(8)).[7] In

reviewing the cited and attached provision, however, Dr. Cohen's

statement does not comport with the Sixth Master Agreement's

text. Subsection A(8) does not require that UDC give an employee

ninety days' "notice," but rather it requires that the

University *initiate* the adverse action within ninety days after

the occurrence of the event warranting discipline. Sixth Master

Agreement, ECF No. 22-1 art. XI § A(8).

Moreover, taking these allegations as true, the claim that

Dr. Cohen's termination was not procedurally perfect is not

relevant to his particular constitutional injury. "A breach of

state procedural requirements is not, in and of itself, a

violation of the Due Process Clause." *Payne v. District of

Columbia*, 808 F. Supp. 2d 164, 174 (D.D.C. 2011) (quotes and

citations omitted). Dr. Cohen does not plead that any procedural

defect in following the Sixth Master Agreement caused his due

process deprivation. Rather, he pleads that the Agreement *itself*

caused the violation because it does not provide a

constitutionally adequate opportunity to be heard.

---

[7] Dr. Cohen cited Article IX which does not contain a section
A(8), but after a careful review of the Article and the Sixth
Master Agreement, the Court believes that Dr. Cohen intended to
cite Article XI § A(8), which references a ninety day time
limit.

Finally, Dr. Cohen alleges that President Sessoms and Provost Baxter "targeted" him for termination by denying him due process for "wholly arbitrary and invidious reasons." Second Am. Compl., ECF No. 22 ¶¶ 24, 25, 27, 36, 40. Dr. Cohen seems to allege that he was discriminated against on account of his age, *id.* at ¶ 24, without actually bringing a discrimination claim. Other allegations read like a "class of one" equal protection claim – that is, he seems to argue that the defendants irrationally treated him differently from other similarly situated employees, not based on his membership in a particular class. *See Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 597 (2008). Not only are discrimination claims and equal protection claims not due process claims, but the "class of one" theory is also not cognizable in public employment cases. *Id.*

In sum, for the reasons articulated, the Section 1983 claim against Professor Steadman in her individual capacity is **DISMISSED**. However, Dr. Cohen has stated a Section 1983 claim against Provost Baxter and President Sessoms in their individual capacities insofar as he alleged that they terminated him pursuant to the Sixth Master Agreement.

### 3. Dr. Cohen Fails to State a *Bivens* Claim

Dr. Cohen reiterates the same due process arguments in his *Bivens* claim against all three Defendants in their individual capacities. Second Am. Compl., ECF No. 22 ¶¶ 37-41. In response,

the defendants again argue that Dr. Cohen failed to allege that they violated his constitutional rights because he was provided him with notice and an opportunity to respond.

"A *Bivens* suit is an action against a [government] officer seeking damages for violations of the plaintiff's constitutional rights. These suits are . . . actions against [government] officers in their individual capacity . . . ." *Simpkins v. District of Columbia Government*, 108 F.3d 366, 368 (D.C. Cir. 1997). Like their Section 1983 counterparts, *Bivens* claims must "at least" allege that the defendant official was personally involved in the illegal conduct. *Id.* at 369.[8] However, "any freestanding damages remedy for a claimed constitutional violation has to represent a judgment about the best way to implement a constitutional guarantee"; a *Bivens* claim is therefore not an "automatic entitlement no matter what other means there may be to vindicate a protected interest." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). In "most cases" the Supreme

---

[8] Qualified immunity protects government officials from civil liability when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Int'l Action Ctr. v. United States*, 365 F.3d 20, 24 (D.C. Cir. 2004). "At the motion to dismiss stage . . . . the defendant bears the burden of pleading and proving qualified immunity." *Dickey v. United States*, 174 F. Supp. 3d 366, 369 (D.D.C. 2016). Because the defendants do not raise a qualified immunity defense, the Court does not address whether they may be entitled to it. *McGinnis*, 65 F.Supp.3d at 220.

Court has "found a *Bivens* remedy unjustified." *Id.* The decision whether to recognize a *Bivens* remedy "is not about ensuring that every violation of a constitutional right is vindicated." *Davis v. Billington*, 681 F.3d 377, 381 (D.C. Cir. 2012). For this reason, the Court must not imply a *Bivens* remedy when the legislature has adopted a "comprehensive remedial scheme," even when "the existing scheme did not afford complete relief to the plaintiff." *Id.* at 381-82 (declining to recognize a *Bivens* claim for the remediless plaintiff because the Civil Service Reform Act was a "comprehensive remedial scheme" to administer public employment rights). Likewise, a Court should not imply a *Bivens* remedy when "alternative, existing" processes provide adequate protection, *Wilkie*, 551 U.S. at 550, or when state law authorizes adequate damages, *Minneci v. Pollard*, 565 U.S. 118, 120 (2011).

Therefore, the defendants argue that there is no basis to "extend *Bivens* liability to any new . . . category of Defendants." Defs.' Mot., ECF No. 24 at 22-23 (quoting *Correction Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). Significantly, Dr. Cohen fails to address this argument in his opposition. Indeed, he makes no argument to support his *Bivens* claim whatsoever. *See generally* Pl.'s Opp'n, ECF No. 25. "It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only

certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Banner Health v. Sebelius*, 905 F. Supp. 2d 174, 185 (D.D.C. 2012) (quoting *Hopkins v. Women's Div., Gen. Bd. of Global Ministries,* 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (citing *FDIC v. Bender,* 127 F.3d 58, 67–68 (D.C. Cir. 1997)). In light of the well-settled hesitation to extend *Bivens* and Dr. Cohen's lack of opposition, the *Bivens* claim against the individual defendants is **DISMISSED**.

## V. Conclusion

Accordingly, for the reasons set forth in this Memorandum Opinion, the defendants' motion to dismiss is **GRANTED IN PART and DENIED IN PART**. Dr. Cohen's remaining claim is his due process claim pursuant to Section 1983 against municipal defendant the UDC Board of Trustees and individual defendants President Sessoms and Provost Baxter. A separate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:** **Emmet G. Sullivan**
**United States District Judge**
**April 24, 2018**