**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| | ) |
| ROBERT COHEN, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| THE BOARD OF TRUSTEES OF THE | ) Civil Action No. 14-754 (EGS) |
| UNIVERSITY OF THE DISTRICT | ) |
| OF COLUMBIA, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OPINION**

## I. Introduction

Plaintiff Robert Cohen ("Dr. Cohen" or "Plaintiff") initiated this suit against the Board of Trustees of the University of the District of Columbia ("UDC" or "the University") and several UDC officials—including then-Provost Graeme Baxter ("Provost Baxter") and then-President Allen Sessoms ("President Sessoms")—(collectively, "Defendants") as a result of Dr. Cohen's termination as a professor at UDC. *See* Second Am. Compl., ECF No. 22 ¶¶ 1-7, 36.[1] The sole remaining claim in Dr. Cohen's suit is a 42 U.S.C. § 1983 ("Section 1983") claim for a violation of his due process rights. *See* Mot. to Dismiss Mem. Op. ("MTD Op."), ECF No. 31 at 2. Pending before

---

[1] When citing electronic filings throughout this Opinion, the Court refers to the ECF header page numbers, not the page numbers of the filed documents.

the Court is Defendants' Motion for Summary Judgment on this claim. *See* Defs.' Mot. Summ. J. ("Defs.' Mot."), ECF No. 54. Upon careful consideration of the motion, the response, the reply thereto, the entire record herein, and the applicable law, the Defendants' Motion for Summary Judgment is hereby **GRANTED**.

## II. Background

### A. Factual Background

Dr. Cohen worked as a professor at the University.[2] Defs.' Reply to Pl.'s Counter-Statement Material Facts Which There Is Genuine Issue ("Defs.' Reply SOMF"), ECF No. 60 at 28. In 2010, Provost Baxter recommended Dr. Cohen for termination based on the latter's failure to submit a complete, cumulative evaluation

---

[2] The facts in this section are undisputed unless otherwise indicated. As Defendants note in their reply brief, *see* Defs.' Reply Br. Supp. Their Mot. Summ. J. ("Defs.' Reply"), ECF No. 60 at 6-7; in order to properly dispute a fact under the local rules, this Court's rules, and the Federal Rules of Civil Procedure, a party must support their claim with citations to the record. *See* Fed. R. Civ. P. 56(c)(1)(A). In his Response to Defendants' Statement of Undisputed Material Facts, Plaintiff often "[d]isagree[s]" with Defendants' stated fact but either: (1) fails to cite to evidence in the record showing a dispute or (2) provides information that does not directly address the fact in question. *See, e.g.*, Pl.'s Rule 56 Resp. Defs.' Statement Undisputed Material Facts, ECF No. 57-3 ¶¶ 5, 7, 11, 14, 15, 28, 37, 39, 44; *see also* Defs.' Reply, ECF No. 60 at 7-13 (providing examples of Plaintiff's failure to properly address and dispute Defendants' facts). Where Plaintiff has failed to properly dispute a fact and where this Court has not independently found evidence in the record challenging Defendants' statement of a fact, that fact is deemed undisputed. *See* Fed. R. Civ. P. 56(e)(2).

portfolio as required by the University. *Id.* at 44-45. Dr. Cohen was sent a statement of cause, explaining the reason for his recommended termination, and he was terminated on August 5, 2010. *Id.* at 45.

The University and its union—the University of the District of Columbia Faculty Association/NEA ("the Union")—had a collective bargaining agreement at the time of Dr. Cohen's termination titled the Sixth Master Agreement ("Sixth Master Agreement" or "the Agreement"). *Id.* at 29. The Sixth Master Agreement allowed a tenured faculty member to appeal their termination to the University President. *Id.* at 32. Dr. Cohen, as a member of the Union, appealed his termination to President Sessoms in early September. *Id.* at 30, 45. President Sessoms denied Dr. Cohen's appeal. *Id.* at 48.

Dr. Cohen contacted the Union President to explore next steps for contesting his termination. *Id.* at 48. The Union President informed Dr. Cohen that: (1) he could file a grievance, as outlined in the Sixth Master Agreement; (2) he had the right to seek representation from outside counsel and that the Union would work with him and his attorney; and (3) he could not assume that the Union would arbitrate his case as it does not take every appeal or grievance to arbitration. *Id.* Dr. Cohen did not file a grievance pursuant to the terms of the Sixth

Master Agreement, and he also did not ask the Union to arbitrate his case. *Id.* at 49.

### B. Procedural Background

Dr. Cohen filed a suit against Defendants for breach of contract in the Superior Court for the District of Columbia in September 2013. *See* Defs.' Notice Removal, ECF No. 1 ¶ 1. In March 2014, the Superior Court for the District of Columbia dismissed Dr. Cohen's breach of contract claim but allowed him to file an amended complaint. *Id.* ¶ 6. Dr. Cohen's amended complaint alleged new causes of action under 42 U.S.C. § 1983 and various common law tort claims. *Id.* ¶ 7. Defendants removed the action to federal court based on Dr. Cohen's constitutional claims. *Id.* ¶ 9.

In April 2018, this Court granted in part Defendants' motion to dismiss, leaving only Dr. Cohen's section 1983 claim for a violation of due process against UDC, President Sessoms, and Provost Baxter.[3] *See* MTD Op., ECF No. 31 at 43. In that opinion, this Court explained that Dr. Cohen's sole, relevant allegation was that the Sixth Master Agreement deprived him of a "meaningful opportunity to be heard" post-deprivation and thus

---

[3] Dr. Cohen also claimed Professor Vernice Steadman violated his due process rights, but this Court concluded that Dr. Cohen failed to state a claim against Professor Steadman. *See* MTD Op., ECF No. 31 at 35-36.

the Agreement itself violated his due process rights. *Id.* at 28. This Court also understood Dr. Cohen's claims against Provost Baxter and President Sessoms to stem from their enforcement of the allegedly unconstitutional agreement. *Id.* at 36. Thus, this Court dismissed the other claims regarding Dr. Cohen's termination and clarified that "Dr. Cohen's remaining claim is his due process claim pursuant to Section 1983 against municipal defendant the UDC Board of Trustees and individual defendants President Sessoms and Provost Baxter." *Id.* at 43; *see also* Minute Order (Dec. 3, 2018) ("The remaining issues in this case are quite limited: (1) whether the Sixth Master Agreement provided sufficient post-termination due process and, if so (2) whether the two remaining individual defendants enforced the purportedly unconstitutional policy.").

Thereafter, Defendants filed a Motion for Summary Judgment on Dr. Cohen's sole remaining claim. *See* Defs.' Mot., ECF No. 54. Plaintiff filed his opposition, *see* Pl.'s Opp'n Defs.' Mot. Summ. J. ("Pl.'s Opp'n"), ECF No. 57; and Defendants filed their reply, *see* Defs.' Reply, ECF No. 60. The motion is ripe and ready for review.

## III. Standard of Review

Federal Rule of Civil Procedure 56 requires the Court to grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to

5

judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one that could "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party bears the burden of "informing the district court of the basis for its motion" as well as "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(1)(A).

To defeat summary judgment, the nonmoving party must "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue [of material fact] for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted). In evaluating a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, the nonmoving party's opposition "must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence" in the record. *Musgrove v. District of Columbia*, 775 F. Supp. 2d 158, 164 (D.D.C. 2011);

*see also Celotex Corp.*, 477 U.S. at 324. If the evidence
favoring the nonmoving party is "merely colorable, or is not
significantly probative, summary judgment may be granted."
*Anderson*, 477 U.S. at 249-50 (internal citations omitted).

## IV.  Analysis

Dr. Cohen's section 1983 due process claim alleges a
violation of his rights because the Sixth Master Agreement fails
to provide adequate post-deprivation due process. *See* MTD Op.,
ECF No. 31 at 28. Under the theory of municipal liability, he
argues that the University is liable because the Agreement is a
municipal policy. *Id.* at 34. Dr. Cohen further argues that the
individual defendants, Provost Baxter and President Sessoms, are
liable for enforcing the allegedly unconstitutional agreement by
terminating Dr. Cohen pursuant to its terms. *Id.* at 40.

In their Motion for Summary Judgment, Defendants argue that
the Sixth Master Agreement provides adequate post-deprivation
due process, which Dr. Cohen failed to utilize. Defs.' Mot., ECF
No. 54 at 22. They further argue that even if the Sixth Master
Agreement was constitutionally inadequate, the individual
defendants are entitled to summary judgment as a matter of law
because they did not violate Dr. Cohen's rights through their
own, individual actions. *Id.* at 34-35. Since Defendants'
liability is contingent upon whether the Court concludes that
there was a violation of due process, the Court will begin with

7

an analysis of the Sixth Master Agreement to determine whether its post-deprivation procedures comport with due process.

### A. Procedural Due Process Requirements

"A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 143 S. Ct. 955, 961 (2023) (citing *Zinermon v. Burch,* 494 U.S. 113, 125 (1990)). As a "general rule," due process requires that individuals "receive notice and an opportunity to be heard before the [deprivation]." *UDC Chairs Chapter v. Bd. of Trs. of the Univ. of D.C.*, 56 F.3d 1469, 1472 (D.C. Cir. 1995) (internal quotation marks omitted). However, "a post-deprivation opportunity to be heard is sufficient in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Id.* at 1473 (internal quotation marks omitted).

In determining whether due process was violated, the Court must "ask what process [was] provided, and whether it was constitutionally adequate." *Zinermon*, 494 U.S. at 126. In the post-deprivation context, "[d]etermining whether a post-deprivation hearing would satisfy the minimal requirements of due process involves an examination of the competing interests at stake, along with the promptness and adequacy of later proceedings." *UDC Chairs Chapter*, 56 F.3d at 1473 (internal

quotation marks omitted). The analysis requires balancing "the three factors set forth in *Mathews v. Eldridge*: the private interest affected; the risk of erroneous deprivation of that interest and the likely value of additional safeguards; and the Government's interest." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).  The inquiry is a "flexible" assessment that "varies with the particular situation." *Zinermon*, 494 U.S. at 127. Additionally, "a procedural due process claim requires the plaintiff to identify the process that is due." *Doe ex rel. Fein v. District of Columbia*, 93 F.3d 861, 870 (D.C. Cir. 1996).

### B. Termination and Post-Deprivation Procedures Under the Sixth Master Agreement

Under the Sixth Master Agreement, tenured faculty members can only be terminated for cause. Defs.' Ex. A ("Sixth Master Agreement"), ECF No. 54-2 at 20. This requirement tasks the University with proving, through "clear and convincing evidence," "gross professional misconduct, conviction of a felony or crime of moral turpitude, or fraud in the securing of employment or promotion, or . . . professional misconduct, or a pattern of dereliction of duties or responsibilities, for which the faculty member was previously suspended." *Id.* at 21.

The procedure begins with a "discussion between the faculty member and a University administrator" regarding the conduct at issue. *Id.* If the University administrator determines that

further action is necessary, they then may "recommend[] to the Provost and Vice President for Academic Affairs the . . . termination of the faculty member." *Id.* After receiving the recommendation, "the Provost and Vice President for Academic Affairs or his or her designee shall conduct an informal inquiry, the purpose of which shall be to determine whether, in his or her opinion, the facts merit the imposition of such sanctions." *Id.* at 22. As part of this inquiry, the Provost and Vice President for Academic Affairs may "consult with" the faculty member at issue "at the request of the faculty member." *Id.* After the informal inquiry, if the Provost and Vice President for Academic Affairs "determines that . . . termination . . . is warranted by the facts, he or she shall provide the faculty member with a written statement of cause, which shall describe with specificity the conduct upon [which] the proposed sanction is based, together with a description of the rights of the faculty member to appeal the action, the available alternatives through which an appeal may be taken and his or her right to assistance by a representative of his or her choice throughout such proceedings." *Id.* The termination is "immediately effective" if the faculty member chooses not to appeal. *Id.* at 22-23.

If the faculty member decides to pursue an appeal, the appeal is "directly to the President." *Id.* at 23. The President

10

then "may conduct such inquiry as he or she may deem appropriate" and shall "either sustain the recommended penalty, modify[] it to a lesser disciplinary or adverse action, use corrective action[,] or dismiss the matter." *Id.* If the President sustains the termination, the faculty member may appeal that decision using the grievance and arbitration procedure in the Agreement. *Id.* at 20, 23.

The grievance and arbitration provision of the Sixth Master Agreement allows a party to file a grievance when "there has been a violation, misinterpretation, or improper application of the terms and conditions of this Agreement." *Id.* at 14. As noted above, the Agreement also explicitly states that a grievance may be filed after the University President sustains a termination decision. *Id.* at 20, 23. Throughout the grievance process, the parties are obligated to "make available information reasonably necessary to process the grievance," subject to a few exceptions for "legally privileged" information, "confidential personal information," and confidential "internal University communications." *Id.* at 15.

The grievance procedure begins with filing the "Official Grievance Form" with the "lowest appropriate management level having authority to dispose of the complaint." *Id.* at 16. If the matter cannot be resolved at the initial level, it will proceed to the first appellate level and the person at that level shall

"investigate the matter as deemed appropriate, discuss the matter with the grievant and/or the Associate President or designee(s) and . . . submit a written decision, including reasons for said decision, to the grievant and the Association." *Id.* That decision may then be appealed to the "next appellate levels and will stop at the President's level." *Id.* The appellate levels in ascending order are: "(i) Department Chair; (ii) Dean; (iii) Provost/Provost and Vice President for Academic Affairs; and (iv) President." *Id.* If the final decision at the President's level is not satisfactory, "the Association, and only the Association, may . . . commence an arbitration proceeding by serving the other party with written notice of intent to arbitrate." *Id.* at 17.

### C. Adequacy of Post-Deprivation Procedures

Defendants argue that the Sixth Master Agreement provides "a vigorous post-deprivation procedure [that] was available to Plaintiff to challenge his termination." Defs.' Mot., ECF No. 54 at 28. Dr. Cohen denies this characterization and claims that he "was afforded no *meaningful* appeal process" and that "genuine fact issue[s]" exist around "the risk of erroneous deprivation[] and the value of additional or substitute procedural safeguards." Pl.'s Opp'n, ECF No. 57 at 5, 6. The Court agrees with Defendants because: (1) the record belies Dr. Cohen's claims of disputed material facts; and (2) the Court concludes

that the procedures provided in the Sixth Master Agreement meet the minimum requirements for due process.

### 1. *Mathews* Factors Analysis

As noted previously, three factors must be balanced to determine whether post-deprivation procedures comport with due process: (1) the private interest affected, in this case Dr. Cohen's right to employment unless terminated properly for cause; (2) the risk of erroneous deprivation of that interest through the existing procedures and the likely value of additional or substitute safeguards; and (3) the Government's interest, including the function involved and the burdens of additional or substitute procedural safeguards. *See Mathews*, 424 U.S. at 335.

Dr. Cohen's arguments in opposition to summary judgment focus on the second *Mathews* factor, claiming that the Agreement creates a "risk of erroneous deprivation" because "there appears to be a factual dispute regarding whether or not Sessoms carried out an independent review at all of Dr. Cohen's appeal" and "there are factual issues regarding the scope and/or meaningfulness of Sessoms' purported independent review." Pl.'s Opp'n, ECF No. 57 at 6. To support his claim, Dr. Cohen cites to portions of President Sessoms's deposition, where he explains his reasoning for sustaining Dr. Cohen's termination. Pl.'s Opp'n, ECF No. 57 at 6-7. Dr. Cohen concludes that such reasons

"could not have been cause for [his] termination" and thus argues that such false reasons are proof of President Sessoms's lack of independent review. *Id.* The Court disagrees.

Dr. Cohen's argument and supporting deposition testimony are unpersuasive because they are irrelevant to the due process claim. First, his claim about President Sessoms's purported lack of independence is irrelevant because it does not address the Sixth Master Agreement's procedures. *See* Minute Order (Dec. 3, 2018). Dr. Cohen does not use President Sessoms's testimony to argue that the Agreement itself mandated a lack of independent review. Therefore, any bias he implies President Sessoms acted on is not probative of whether the Agreement's procedures themselves, when carried out properly, deprive terminated faculty members of due process.[4]

---

[4] Relatedly, the Court also notes that Dr. Cohen's claims and the cited deposition testimony about his termination go beyond the scope of this Court's discovery order. In December 2018, this Court specified that Dr. Cohen was not entitled to discovery regarding "defendants' decision to terminate him." Minute Order (Dec. 3, 2018). Defendants' counsel objected to Dr. Cohen's counsel's line of questioning about the termination decision during President Sessoms's deposition, but counsel persisted nonetheless. *See* Deposition of Allen Sessoms, ECF No. 57-4 at 36 (Defendants' counsel noting that Plaintiff's counsel was "not allowed to inquire about the Defendant's decision to terminate the Plaintiff" based on this Court's "discovery order"); *id.* at 35 (Defendants' counsel objecting to Plaintiff's counsel's questions that "ha[d] nothing to do with a post-termination deprivation of due process"). The discovery order reminded the parties of the "quite limited" remaining issues in the case and

Furthermore, Dr. Cohen's argument is irrelevant because it does not substantively attack the independence of President Sessoms's review; rather, it challenges the outcome of that review. Although he may not agree that failure to complete evaluations warrants dismissal, this challenge is about the result of the appeal as opposed to the process provided. It is therefore beyond the purview of the Due Process Clause. *See Bishop v. Wood*, 426 U.S. 341, 350 (1976) ("The Due Process Clause . . . is not a guarantee against incorrect or ill-advised . . . decisions."); *Nat'l Collegiate Preparatory v. D.C. Charter Sch. Bd.*, No. 19-1785, 2019 WL 7344826, at *3 (D.D.C. Dec. 11, 2019) (observing that the due process clause requires "distinguish[ing] between outcomes and procedures" and that "the due-process clause does not protect any particular outcome; instead, it merely ensures that the procedures that led to such outcome are fair").

Turning to the relevant evidence in the record, the Agreement provides that the President shall review the termination decision from the Provost and Vice President for Academic Affairs. Sixth Master Agreement, ECF No. 54-2 at 23. The Agreement then provides for the President to "conduct such

---

denied discovery for issues "which are not relevant to this case." Minute Order (Dec. 3, 2018).

inquiry as he or she may deem appropriate." *Id.* Nothing in this procedure suggests a lack of independence in the President's review. The President is not involved in the initial termination decision, but rather is limited to reviewing the Provost and Vice President for Academic Affairs' reasoning. Since the President is allowed to conduct an independent inquiry and review the Provost and Vice President for Academic Affairs' written statement of cause for termination, the Court does not agree that a risk of an erroneous deprivation is "essentially guaranteed" by this process. *See* Pl.'s Opp'n, ECF No. 57 at 7.

Dr. Cohen lists a variety of other contentions with the Sixth Master Agreement's process, which also seem to concern the risk of an erroneous deprivation. He claims that in the existing process, there was: "(1) no attempt at any new fact finding that was not pre-termination, (2) no independent panel of senior faculty convened to investigate the charges against him, (3) no communications or consultations with anyone else or use of any other documents – other than pre-termination documents . . . (4) no 'hearing' as is customary and standard for tenured professors at all Universities, (5) a concerted effort to bypass all District of Columbia employment regulations under the CMPA . . . [and] (6) no consideration of Constitutional issues of due process under *Mathews v. Eldridge*." Pl.'s Opp'n, ECF No. 57 at 5. Dr. Cohen fails to provide any substantive argument regarding

16

these six complaints and that is grounds enough for rejecting the arguments. *See United States v. TDC Mgmt. Corp.*, 827 F.3d 1127, 1130 (D.C. Cir. 2016) (holding an argument forfeited because a party did not "further develop it . . . after [a] single, conclusory statement" (internal quotation marks omitted)); *Cox v. Nielsen*, No. 16-1966, 2019 WL 1359806, at *14 (D.D.C. Mar. 26, 2019) (holding argument forfeited because "Plaintiff makes no reference to the record evidence and no citation to authority in support" of the argument). However, the Court will briefly address each in order to fully consider the second *Mathews* factor.

Dr. Cohen's first and third concerns address fact finding and the use of documents in the post-termination process. He points to no caselaw that requires "new fact finding" or the use of non-pre-termination documents in order to comport with due process. The Sixth Master Agreement allows the President, in the appeal process, to conduct any inquiry they deem necessary to make their decision about the appeal. *See* Sixth Master Agreement, ECF No. 54-2 at 23. Furthermore, in the grievance process that follows the President's appeal, the parties have an obligation under the Agreement to "make available information reasonably necessary to process the grievance." Sixth Master Agreement, ECF No. 54-2 at 15. Thus, if additional information is necessary to properly assess the termination decision, such

17

information is required by the Agreement to be made available. Therefore, the Agreement itself does not impinge any fact finding necessary to carry out due process. To the extent Dr. Cohen is making an argument about what actually occurred in his appeal, that inquiry is again beyond the scope of the issues that remain in this case.

Dr. Cohen's fourth concern is the lack of a "hearing," which he claims is "customary" at "all Universities." However, due process does not require a formal "hearing," but rather, an "opportunity to be heard." *UDC Chairs Chapter*, 56 F.3d at 1472. The Sixth Master Agreement provides such an opportunity pre-deprivation, when it requires any termination to be preceded by "a discussion between the faculty member and a University administrator." Sixth Master Agreement, ECF No. 54-2 at 21. It also provides such an opportunity post-termination through the direct appeal of termination to the President and the following grievance process. Specifically, the opportunity may be presented if the President chooses to conduct an inquiry during the appeal. *Id.* at 23. But if not, the initiation of the grievance process begins with filing an official grievance form, which requires a grievant—in this case, a terminated faculty member—to complete a "narrative," stating "to the extent known, the nature of the grievance, the act(s) of commission or omission giving rise to it, [and] the date(s) and the person(s)

responsible for those act(s)," allowing a grievant to "[a]ttach a separate sheet if needed, and attach any relevant documentation." *Id.* at 16, 78; *see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985) ("some opportunity for the employee to present his side of the case is recurringly of obvious value in reaching an accurate decision"). Thus, even though the Agreement may not provide for a formal "hearing," the Agreement comports with due process by giving terminated faculty members several opportunities to be heard and present their case throughout the process.

Dr. Cohen's second concern is the lack of an "independent panel of senior faculty convened to investigate the charges against the Plaintiff." Again, he points to no authority supporting the proposition that such a panel is necessary for due process. The Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has noted that in some circumstances, where the inquiry is "particularly subjective," due process may require review by a second, separate decisionmaker. *See Barkley v. U.S. Mashals Serv. ex rel. Hylton*, 766 F.3d 25, 33 (D.C. Cir. 2014) (discussing such a situation in *Propert v. District of Columbia*, 948 F.2d 1327 (D.C. Cir. 1991)). However, Plaintiff does not argue that those circumstances are present here, and a review of the factual record does not raise such a concern. As noted above, the Sixth Master Agreement allows a faculty member

to be terminated only if the University can prove "gross professional misconduct, conviction of a felony or crime of moral turpitude, or fraud in the securing of employment or promotion, or . . . professional misconduct, or a pattern of dereliction of duties or responsibilities, for which the faculty member was previously suspended." Sixth Master Agreement, ECF No. 54-2 at 21. This list is not "particularly subjective," and instead suggests that only egregious conduct will be considered and in some cases suspension must precede a termination. Thus, because the termination criteria is not "particularly subjective," the Court does not conclude that appeal to a second, separate decisionmaker—in the form of an independent panel of senior faculty or otherwise—is required by due process. The objectivity of the inquiry and the fact that the University President is not involved in the initial determination to terminate the faculty member is sufficient process to protect against a risk of erroneous deprivation. *See Barkley*, 766 F.3d at 33.

Dr. Cohen's fifth and sixth concerns also do not implicate a due process violation. Although he faults the Agreement for not providing for additional protections under the CMPA, a CMPA-sanctioned collective bargaining agreement that makes its own remedies exclusive is not in itself a violation of due process. *See District of Columbia v. Thompson*, 593 A.2d 621, 627 (D.C.

20

1991) (noting that "CMPA and a CMPA-sanctioned union contract
are alternative governing documents generally covering the same
scope of employer-employee rights and duties"); MTD Op., ECF No.
31 at 11, 19 (noting that the Sixth Master Agreement is a "CMPA-
sanctioned" collective bargaining agreement). The relevant
question for such an agreement is the same as for all procedural
due process challenges—whether the remedies provided meet the
minimum requirements of due process. *See Zinermon*, 494 U.S. at
126. Similarly, Dr. Cohen's sixth concern about the *Mathews*
factors is being specifically addressed in this opinion.
Therefore, overall, the Court is not persuaded that the Sixth
Master Agreement's post-termination procedures have a high risk
of erroneous deprivation.

Although some of Dr. Cohen's concerns identify potential
additional safeguards for due process, he does not advocate for
them as such. In a separate section of his brief, Dr. Cohen
claims that there is a "factual dispute regarding the
availability of additional procedural safeguards that are now
codified in District of Columbia Municipal Regulations." Pl.'s
Opp'n, ECF No. 57 at 10. He concludes that "[w]here procedural
safeguards are subsequently adopted, where they were not
available before, an inference can be made that the prior
process was not sufficient." *Id.* However, Dr. Cohen again
provides no legal or factual support for this "inference." And

21

the Court does not agree with his logic. Although subsequent procedural safeguards may further ensure that a process comports with due process, the development of later procedural safeguards does not inherently mean that a prior process was insufficient. Furthermore, Dr. Cohen does not specify which "additional procedural safeguards" were codified and why they might be necessary to comport with due process; instead, he merely cites the regulations with no explanation. *See* Pl.'s Opp'n, ECF No. 57 at 10. Thus, Dr. Cohen fails to present any argument at all about what additional procedures would be necessary for the Sixth Master Agreement to comport with due process.[5] This is fatal to his due process claim as a matter of law and is an independent reason for why the Court is granting summary judgment. *See Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec.*, 980 F.3d 109, 120 (D.C. Cir. 2020) (holding that a Plaintiff's due process claims "fail for an independent reason—[Plaintiff] has not suggested what plausible alternative safeguards would be constitutionally adequate"); *Doe*, 93 F.3d at 870 ("a procedural due process claim requires the plaintiff to identify the process that is due").

---

[5] In his opposition to Defendants' Motion to Dismiss, Dr. Cohen argued that "impartial judicial review" was required to comport with due process. *See* MTD Op., ECF No. 31 at 23. But he does not pursue this argument in his opposition to the pending Motion for Summary Judgment. *See generally* Pl.'s Opp'n, ECF No. 57.

Although neither party addresses the other two *Mathews* factors, the Court briefly addresses those factors in order to balance the competing interests. In terms of the private interest affected, the D.C. Circuit and the Supreme Court have recognized a significant private interest in retaining employment. *See Washington Teachers' Union Local No. 6 v. Bd. of Educ. of D.C.*, 109 F.3d 774, 780 (D.C. Cir. 1997); *Loudermill*, 470 U.S. at 543. The Supreme Court has also recognized a governmental interest "in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens." *Loudermill*, 470 U.S. at 543.

Turning now to balancing the identified factors in this case, the Court concludes that the existing post-termination processes under the Sixth Master Agreement are sufficient to satisfy due process. The Court acknowledges Dr. Cohen's significant private interest in his continued employment but also notes that he does not argue that his interest is so substantial as to require a pre-termination hearing. *See Loudermill*, 470 U.S. at 544-45. Additionally, because tenured faculty terminations are subject to the for cause provision and cause is explicitly defined in the agreement to mean "professional misconduct or a pattern of dereliction of duties or responsibilities," *see* Sixth Master Agreement, ECF No. 54-2 at 20; the University's interest in expeditiously separating

unsatisfactory employees who are hindering its purpose is
especially prevalent. Finally, as noted above, given that the
terminated faculty member has—as set forth in the Sixth Master
Agreement—the ability to appeal the decision of termination to
the President and then to further appeal (with aid from the
Union) through the grievance process, the Court concludes that
any risk of erroneous deprivation of employment is minimal. *See
Mathews*, 424 U.S. at 344 ("procedural due process rules are
shaped by the risk of error inherent in the truthfinding process
as applied to the generality of cases, not the rare
exceptions").

Therefore, the Court concludes that Defendants are entitled
to summary judgment for two reasons. First, Dr. Cohen fails to
identify and advocate for additional procedural safeguards that
he believes are necessary for the Sixth Master Agreement to
comport with due process. Second, the Court's analysis of the
*Mathews* factors demonstrates that the Sixth Master Agreement's
existing post-termination procedures adequately comport with due
process.

### 2. Other Challenges

Dr. Cohen makes several other claims of "factual issues,"
which do not map onto the *Mathews* factors and which do not
undermine the Court's reasons for granting summary judgment. He
claims that there are factual disputes about the grievance

procedure, specifically "(1) what the 'grievance procedure'
actually is, (2) whether [he] could invoke said procedure, (3)
whether [he] was ever informed of it, and (4) whether it would
have made any difference in the outcome of Dr. Cohen's
termination." Pl.'s Opp'n, ECF No. 57 at 7. The Court rejects
these claims as either directly belied by the record or
irrelevant to the remaining issues in this case.

Regarding the first two concerns, Dr. Cohen claims that the
"grievance procedure would not apply to him as he lost his
status under the Sixth Master Agreement once Sessoms denied his
appeal" and "the grievance procedure did not apply to
terminations." *Id.* He fails however, to provide any evidentiary
support for these contentions, and the Sixth Master Agreement
explicitly contradicts these claims. The Agreement states that
the President's appeal "if it relates to a non-probationary
faculty member and entails . . . termination . . . may be
appealed by the Association to arbitration in accordance with
the Grievance Procedure and Arbitration article." Sixth Master
Agreement, ECF No. 54-2 at 23. The grievance procedure and
arbitration article states that such arbitration may be pursued
by the Association after exhaustion of all other levels of
appeal. *Id.* at 16-17. It does not state that terminated faculty
members "los[e] [their] status" to pursue an appeal once
terminated and in fact, Dr. Cohen was informed by the Union

President that he was able to file a grievance if his
termination was sustained by the President.[6] *See* Defs.' Reply
SOMF, ECF No. 60 at 48. Thus, Dr. Cohen, as a terminated faculty
member who appealed his termination to the President, had—
according to the explicit terms of the Sixth Master Agreement—
the ability to appeal this termination through the grievance
procedure.

Dr. Cohen's third concern that he was not "informed" about
the procedure, is not within the scope of the issues left in
this case. *See* MTD Op., ECF No. 31 at 28 (concluding that
Plaintiff's remaining "relevant allegation . . . [was] that Dr.
Cohen was not provided with a meaningful opportunity to be heard
once he was terminated"). It is also belied by the record
because, as noted above, Dr. Cohen was informed of his right by
the Union President and the right was stated in the Agreement.

---

[6] Dr. Cohen "[d]isagree[s]" with this fact but points to no
evidence in the record to support his claim that he "could not
file a grievance." *See* Defs.' Reply SOMF, ECF No. 60 at 48.
Rather, the record shows that he was informed directly by the
President of the Union that he could file a grievance and the
explicit terms of the Sixth Master Agreement confirm this
ability. To the extent Dr. Cohen was mistaken about his ability
to file a grievance, that mistake is not a flaw of the process
provided in the Sixth Master Agreement. *See Barkley*, 766 F.3d at
33 (finding procedures satisfied due process when any identified
failure was a failure "in the individual's response, not an
inadequacy in the [given] procedures").

Dr. Cohen's last concern that the procedure may not have "made any difference in the outcome of [his] termination," is the incorrect focus for a due process claim. As noted previously, a due process claim does not focus on outcomes, but rather only ensures that the procedures that generate an outcome are fair. *See Bishop*, 426 U.S. at 350.

Therefore, the Court concludes that Dr. Cohen has not identified material factual disputes in the record and Defendants are therefore entitled to summary judgment.

### D. Individual Liability of President Sessoms and Provost Baxter

Because the individual liability of President Sessoms and Provost Baxter is contingent on the Court's finding of a due process violation in the Sixth Master Agreement's procedures, *see* Minute Order (Dec. 3, 2018); the Court concludes that the individual Defendants are also entitled to summary judgment.

Dr. Cohen attempts to avoid this conclusion by attacking President Sessoms's and Provost Baxter's independence. *See* Pl.'s Opp'n, ECF No. 57 at 10-11. However, this argument again exceeds the scope of the issues remaining in this suit. The Court has emphasized several times that the individual liability of President Sessoms and Provost Baxter is limited only to determining whether they enforced the purportedly unconstitutional Sixth Master Agreement, not whether they

violated Dr. Cohen's due process rights by not following the Agreement. *See* MTD Op., ECF No. 31 at 40 (concluding that "Dr. Cohen has stated a Section 1983 claim against Provost Baxter and President Sessoms in their individual capacities insofar as he alleged that they terminated him *pursuant to* the Sixth Master Agreement" (emphasis added)); Minute Order (Dec. 3, 2018) ("The remaining issues in this case are quite limited: (1) whether the Sixth Master Agreement provided sufficient post-termination due process and, if so (2) whether the *two remaining individual defendants enforced the purportedly unconstitutional policy*." (emphasis added)).

**V. Conclusion**

Accordingly, for the reasons set forth in this Memorandum Opinion, the Defendants' Motion for Summary Judgment, *see* ECF No. 54, is **GRANTED**. A separate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**           United States District Judge**
**           December 5, 2023**